**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| **JOHN W. HOWARD**, | ) | |
| | ) | |
| Debtor | ) | |

---

| | | |
|---|---|---|
| **UNITED BANK, INC.,** | ) | |
| | ) | 2:10cv962 |
| Appellee, | ) | Electronic Filing |
| | ) | |
| v. | ) | |
| | ) | (Bankruptcy No. 08-22224-JAD) |
| | ) | (Adversary No. 09-02127-JAD) |
| **VICTORIA M. HOWARD**, | ) | |
| | ) | |
| Appellant. | ) | |

## <u>MEMORANDUM OPINION</u>

Victoria Howard ("appellant"), an unsecured creditor in her ex-husband's bankruptcy proceeding at No. 08-22224, and a defendant in an adversary proceeding commenced by the trustee of the estate created upon the filing of the petition in bankruptcy, appeals the entire series of orders underlying and effectuating the bankruptcy court's determination that as a matter of law the estate of the debtor, John Howard, and not Victoria Howard, owned the mineral rights to certain property situated in Whitley Township, Greene County, Pennsylvania, at the time the debtor filed his petition in bankruptcy. Appellant also challenges the series of orders underlying and effectuating the bankruptcy court's determination that the trustee was entitled to recover all proceeds from an advance received by appellant pursuant to an oil and gas lease, with interest, as property of the estate. Appellant further challenges the court's award of compensatory damages in the form of attorneys fees, costs and punitive damages as a consequence of appellant's

"willful" violation of the automatic stay. For the reasons set forth below, the orders of the bankruptcy court will be affirmed.

The trustee commenced an adversary proceeding by filing a complaint on March 9, 2009, seeking to recover a fraudulent transfer. Among other things, the adversary complaint alleged that pursuant to the "strong arm" powers found at 11 U.S.C. § 544, the trustee obtained the rights to the minerals underlying a tract of land in Whitley Township, Greene County, Pennsylvania, including coal and gas and oil rights ("the mineral rights"), upon the debtor filing a petition in bankruptcy. The trustee averred that the acquired rights were superior to any competing rights asserted by appellant. It was further alleged that appellant improperly effectuated a transfer of the mineral rights in violation of the automatic stay by recording a quit claim deed and entering into a prepaid lease for exploration of the mineral rights post-petition without obtaining authorization from the bankruptcy court prior to doing so.

Appellant answered the complaint and disputed the trustee's position, asserting the transfer of the mineral rights between the debtor and appellant occurred years before the filing of the petition pursuant to an unrecorded 1990 handwritten agreement. Appellant had entered into a lease with J&J Oil on August 12, 2008, by executing a "Paid Up Oil & Gas Lease" and received an advance of $600,000.00 in royalties. A quit claim deed was recorded on August 25, 2008, wherein the debtor relinquished all rights to the mineral rights in favor of appellant. Appellant recorded the lease in the chain of title on October 2, 2008.

Appellant filed a motion for summary judgment on September 28, 2009, asserting she was entitled to the mineral rights as a result of the 1990 handwritten agreement. The trustee filed a response to the motion and a cross-motion for summary judgment on October 26, 2009. Appellant was ordered to provide an accounting of the proceeds received pursuant to the lease.

2

After review and argument, the bankruptcy court issued an order from the bench on December 1, 2009, granting the trustee's motion in part and ruling that the trustee had acquired a superior claim to the mineral rights on the date the debtor filed his petition and therefore owned all of the mineral rights. As a consequence, appellant was ordered to turn over to the trustee all remaining proceeds she had received under the lease with J&J Oil. She also was determined to be liable for any portion of the proceeds that had been dissipated. The bankruptcy court issued a written memorandum opinion in support of these rulings on December 10, 2009. See Memorandum Opinion of December 10, 2009 (Doc. No. 1-7). The court also determined that further proceedings were necessary in order to ascertain the amount of damages the trustee incurred or that were otherwise appropriate as a result of appellant's "willful" violation of the automatic stay. Id. at 24-25.

Appellant immediately attempted to appeal the bankruptcy court's rulings and filed a motion with the bankruptcy court on January 6, 2010, seeking to stay the court's summary judgment orders. The trustee sought to have the appeal dismissed as interlocutory and objected to the motion for stay. On January 15, 2010, the bankruptcy court denied the motion to stay and granted the trustee's motion to compel enforcement of the previous orders directing appellant to turn over the funds from the lease that had not yet been dissipated. In so ruling the bankruptcy court noted: "once the Mineral Rights proceeds are returned to the Trustee, the Trustee is precluded from distributing the same to creditors absent an order of this Court. In this regard, a mechanism is in place to protect the status quo during the pendency of the appeal." See Memorandum and Order of January 15, 2010, (Doc. No. 1-21) at 18. Appellant thereafter turned over approximately $472,000.00 to the trustee.

A hearing was held on the trustee's claimed damages on April 9, 2010. Appellant subsequently filed a motion for reconsideration on the issue of whether the trustee could be awarded damages for violation of the automatic stay. The bankruptcy court denied the motion and affirmed its initial ruling pursuant to a Memorandum and Order issued on May 14, 2010. See Memorandum and Order of May 15, 2010 (Doc. No. 1-29). On May 17, 2010, the bankruptcy court entered judgment in favor of the trustee awarding $128,000 in damages for the dissipated funds from the oil and gas lease, $493.20 in interest, $76,068.90 in actual damages (reflecting attorneys fees incurred by the trustee) and $5,000.00 in punitive damages. See Memorandum and Order of May 17, 2010, (Doc. 1-31) at 11.

The trustee also requested additional fees that would be incurred after the submissions outlining the fees and costs incurred through the date of the hearing. Id. at 3 and n. 3. The court directed the trustee to submit a supplemental affidavit outlining such fees and costs. Id. at 10-11. On June 14, 2010, the bankruptcy court entered an order awarding the trustee an additional $15,035.50 in fees and $699.35 in costs. See Order of June 14, 2010 (Doc. No. 1-37).

Appellant then filed an "Election to Appeal" with the bankruptcy court and a notice of appeal in this court, appealing the final order of June 14, 2010 (or any subsequent "final judgment on a separate document as required by Rule 58, F.R.C.P., [or] in the event that the Bankruptcy Court does not issue judgment on a separate document under Rule 58, then th[e] appeal is from the last order and judgment entered by the Bankruptcy Court, which occurred on June 14, 2010, but the appellant expressly challenges the orders and judgments entered by the Bankruptcy Court on December 1, 2009 (bench order), December 10, 2009, January 15, 2010, April 9, 2010, May 14, 2010 and May 17, 2010." Exhibit – "Notice of Appeal" (Doc. No. 1-40) attached as Exhibit A to "Election to Appeal" (Doc. No. 1-39).

On June 10, 2010, the trustee filed a "Motion to Sell Property of the Estate Free and Clear of All liens and Encumbrances."  The motion was made pursuant to 11 U.S.C. § 363(b).  <u>See</u> Motion to Sell Property of the Estate Free and Clear of All liens and Encumbrances (Doc. No. 649 in Bankruptcy No. 08-22224-JAD) at ¶ 12.  Appellant filed a "response" to the motion wherein she recounted her competing claim to the mineral rights, the ongoing litigation in the adversary proceeding regarding the same, and her appeal of the judgments entered in the adversary proceeding that had awarded ownership of the mineral rights to the trustee.  She requested that any order granting the trustee's motion to sell acknowledge appellant's "continuing competing claim to ownership of the property, and must also require United Bank, Inc., to hold the said mineral rights and proceeds in trust or in escrow, and otherwise must restrict United Bank from selling, transferring, distributing, bargaining or encumbering the said mineral rights and/or any proceeds relating thereto, particularly funds in the amount of $472,000 that this [Bankruptcy] Court heretofore required [appellant] to turn over to the Trustee."  Response Regarding the Hearing on 07/10/2010 (Doc. No. 672 in Bankruptcy No. 08-22224-JAD) at 3.

A hearing on the trustee's motion was held on July 20, 2010, as scheduled.  <u>See</u> Proceeding Memo (Doc. No. 689 in Bankruptcy No. 08-22224-JAD).  Appellant failed to appear at the hearing.  <u>Id.</u>  An order was entered on that date granting the trustee's motion, finding United Bank to be a good faith purchaser pursuant to U.S.C. § 363 and <u>In re Abbots Dairies of Pennsylvania, Inc.</u>, 788 F.2d 143 (3d Cir. 1986), and "overruling" the objections of appellant and also deeming them to be waived "for failure to appear and prosecute."  Order of July 20, 2010 (Doc. No. 690 in Bankruptcy No. 08-22224-JAD) at ¶ 13.  Appellant did not seek further relief from the bankruptcy court.  <u>See</u> <u>generally</u> the docket in Bankruptcy No. 08-22224-JAD.  The

sale was consummated and thereafter reported as complete on July 29, 2010.  <u>See</u> Report of Sale (Doc. No. 700 in Bankruptcy No. 08-22224-JAD).

On August 3, 2010, United Bank filed a motion seeking to substitute itself as the appellee.  Appellant did not contest the proposed substitution and an order was entered on August 11, 2010, granting United Bank's motion.

Appellant raises a plethora of challenges to the substantive and procedural aspects of the bankruptcy court's rulings.  She asserts that the court erred in concluding the trustee acquired a superior claim of ownership to the mineral rights and thus erred in rendering all of the concomitant orders that followed from that determination.  In addition, the court erred (1) in reaching issues that purportedly were beyond the matters raised by the parties' cross-motions for summary judgment and/or (2) by deciding various issues without adequate evidence to do so.  It also erred in concluding that (1) the trustee was an individual who could recover damages for violation of the automatic stay and (2) punitive damages were recoverable and appropriately imposed.

Appellee contends that appellant's failure to seek and obtain a stay of the order authorizing the trustee's sale of the assets of the estate precludes the review of the orders awarding ownership of the mineral rights to the trustee pursuant to equitable mootness and/or statutory mootness under 11 U.S.C. § 363(m).  In the alternative, the court correctly determined that the trustee had a superior claim to the mineral rights under the "strong arm" powers set forth at 11 U.S.C. § 544 and properly reached and resolved all related issues presented by the parties' filings.

Notwithstanding appellant's vitriol as to the propriety of the bankruptcy court's rulings in the adversarial proceeding, section 363(m) of the United States Bankruptcy Code bars further

review of the central issues raised in this appeal regarding the ownership of the mineral rights.

That section provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). This provision reflects a congressional mandate directing that as a general matter orders authorizing the sale of "property" of a bankruptcy estate be deemed final unless a stay of the order authorizing the sale is obtained. See Pittsburgh Food & Beverage, Inc. v. Ranallo, 112 F.3d 645, 647, 651 (3d Cir. 1997) (the appellant's inability to obtain a stay of the bankruptcy court's order approving the sale of the debtor's assets and the district court's inability to grant relief without affecting the validity of the sale rendered appeal moot). In so providing, "section 363(m) fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly [the policy of giving] finality to those orders and judgments upon which third parties rely.'" Id. at 647-8 (quoting In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147 (3d Cir. 1986) (internal quotation marks and citation omitted)).

Assuming that an authorization of sale was obtained under either §§ 363(b) or (c), § 363(m) will create "statutory mootness" where two other prerequisites are satisfied: "(1) the underlying sale or lease was not stayed pending the appeal, and (2) the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of such a sale or lease." Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc., 141 F.3d 490, 499 (3d Cir. 1998); accord In re Rickel Home Centers, Inc., 209 F.3d 291, 298 (3d Cir. 2000) (same). The proponent of the protections afforded by § 363 bears the burden of proving the statutory and prudential

7

prerequisites have been satisfied.  In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); In re Summit Global Logistics, Inc., 2008 WL 819934, * 9 (Bankr. D. N.J. 2008).  In contrast, a party objecting to an order of authorization under § 363(b) has the burden of advancing sufficient grounds to support its position.  In re Lionel Corp., 722 F.2d 1063, 1071 (3d Cir. 1983) ("While a debtor applying under § 363(b) carries the burden of demonstrating that a use, sale or lease out of the ordinary course of business will aid the debtor's reorganization, an objectant, such as the Equity Committee here, is required to produce some evidence respecting its objections.").

All prerequisites for application of § 363(m) are present.  First, the procedural history underlying this bankruptcy appeal demonstrates that the mineral rights were sold pursuant to an order granting authorization pursuant to § 363(b)(1).  See Motion to Sell Property of the Estate Free and Clear of All Liens and Encumbrances (Doc. No. 649 in Bankruptcy No. 08-22224-JAD) at ¶ 12.

Second, it is undisputed that appellant did not file a motion seeking to stay the order of July 20, 2010.  While appellant did file a response to the proposed sale and raised her objection to proceeding with the sale without expressed recognition of her competing claim of ownership as raised in the adversarial proceeding, she did not attend the hearing on the motion or seek to stay the order of authorization.  The sale subsequently was consummated with a good faith purchaser and in accordance with the bankruptcy court's order of authorization.  See Order of July 20, 2010 (Doc. No. 690 in Bankruptcy No. 08-22224-JAD) at ¶ 13; Report of Sale (Doc. No. 700 in Bankruptcy No. 08-22224-JAD).

Finally, all of the forms of relief requested by appellant would affect the validity of the sale. Appellant essentially identifies three forms of relief: "(1) reversal of the judgment of the bankruptcy court awarding ownership of the mineral rights to the trustee; (2) order the return of the property to Victoria Howard; [and] (3) order the return of the cash of which Ms. Howard was divested." Appellant's Reply and Brief in Opposition to Appellee's Motion to Dismiss (Doc. No. 14) at 5.

Of course, § 363(m) does not say that a reversal or modification of the judgment in the adversarial proceeding cannot award ownership of the property to someone other than the debtor's estate. Nevertheless, it does "restrict the results of a reversal or modification of a bankruptcy court's order authorizing a sale . . ., if reversal or modification would affect the validity of the sale . . . ." Krebs Chrysler-Plymouth, 141 F.3d at 499.

At the very least, the scope of § 363(b) draws within its ambit the proposed sale of all property that is "colorably" within the bankruptcy court's jurisdiction. Pittsburgh Food & Beverage, 112 F.3d at 650 (noting that § 363(m) does not distinguish between challenges to orders based on jurisdictional as opposed to other grounds and concluding that such a challenge could not be entertained where the bankruptcy court "at least arguably" had jurisdiction over the property when it reached through the debtor's corporate structure to approve the sale of its subsidiary's assets); In re Sax, 796 F.2d 994, 997 (7th Cir. 1986) ("Section 363(m) does not say that the sale must be proper under § 363(b); it says the sale must be authorized under § 363(b)."); In re Parker, 499 F.3d 616, 624 (6th Cir. 2007) ("All this cataloguing of precedent is to say we are in good company when we reject Defendant's jurisdictional attack on statutory mootness.").

The congressional mandate in § 363(m) applies to orders that would only indirectly affect the validity of an authorized sale. Cf. Krebs, 141 F.3d at 500 ("Krebs wants us to reverse the

bankruptcy court's order allowing Valley to reject the buy-sell agreement.  Naturally, this would

have an impact on the validity of the auction sale of the Jeep-Eagle franchise, because reversing

the rejection would necessarily require reversing the subsequent assumption and assignment of

the underlying franchises.  Clearly, this remedy is not permitted by section 363(m).").  It follows

that reversal of the orders awarding ownership of the mineral rights to the trustee is a remedy

foreclosed by § 363(m).

     Similarly, an order awarding return of the property to appellant would affect the validity

of the sale.  Cf. In re Rickel Home Centers, Inc., 209 F.3d 291, 305 (3d Cir. 2000) (revocation of

the bankruptcy court's order authorizing  the assumption of a lease necessarily would affect the

validity of the subsequent assignment of the lease).  Indeed, "[o]ne cannot challenge the validity

of a central element of a purchase ... without challenging the validity of the sale itself."  Parker,

499 F.3d at 622 (quoting In re The Charter Co., 829 F.2d 1054, 1056 (11th Cir. 1987)).

     Finally, awarding a refund or recoupment of cash to appellant from the trustee or United

Bank would affect the validity of the sale.  See Krebs, 141 F.3d at 500 (seeking refund from

creditor who purchased assets knowing of competing claims relating to authorized sale affects

the sale price and thus is an attack on the validity of the sale) (citing Pittsburgh Food, 112 F.3d

649, 650).  Again, such proposed relief goes to the very core of the authorized sale.  Parker, 499

F.3d at 622 (relief that materially modifies the asset purchased affects the validity of the sale)

(citing In re Stadium Mgmt. Corp., 895 F.2d 845, 849 (1st Cir. 1990) (rejecting relief sought

because it "would change the deal that the purchaser made").

     All of the forms of relief sought by appellant would affect the validity of the sale.

Consequently, all of the prerequisites for statutory mootness under § 363(m) are present and

appellant's challenges to the bankruptcy court's rulings in the adversarial proceeding pertaining to the ownership of the mineral rights must be dismissed as moot.

Moreover, even assuming for the sake of argument that it is proper to reach the merits of the ownership of the mineral rights, the bankruptcy court correctly determined that no genuine issue of material fact exists as to whether the trustee's rights are superior to that of appellant's by operation of the "strong arm" provision of 11 U.S.C. § 544. This section of the Bankruptcy Code provides in relevant part:

> (a)     The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation of the debtor that is voidable by ---
> …
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). Under this provision, "the trustee may defeat a claim against the debtor's estate if under the applicable state law, a hypothetical bona fide purchaser of real property in question would have prevailed over the claim as of the date of the bankruptcy filing." In re White Beauty View, Inc., 81 B.R. 290, 293 (Bankr. M.D. Pa. 1988) (quoting In re Dlott, 43 B.R. 789, 792-793 (Bankr. D. Mass. 1983)). By standing in the position of a hypothetical bona fide purchaser, the trustee is "deemed to have conducted a title search of the property, paid value for the property, and perfected his/her interest as of the date of commencement of the case." In re Speer, 328 B.R. 699, 703 (Bankr. W.D. Pa. 2005) (citing In re Sosnowski, 314 B.R. 23 (Bankr. D. Del. 2004)).

The trustee becomes a bona fide purchaser as of the petition date.  In re Best, 417 B.R. 259, 281 (Bankr. E.D. Pa. 2009) ("Section 544(a)(3) grants a trustee . . . as of the date of the petition's filing . . . the rights of a bona fide purchaser when, as in this case, real property is in issue.").  The contours of the trustee's rights as a bona fide purchaser are determined by the substantive state law pertaining to the subject property.  In re Bridge, 18 F.3d 195, 200 (3d Cir. 1994) (The scope of trustee's strong arm powers is "governed entirely by the substantive law of the state in which the property in question is located as of the bankruptcy petition's filing."); see also McCannon v. Marston, 679 F.2d 13, 14 (applying Pennsylvania law to determine whether trustee's strong arm power under § 544(a)(3) could avoid the unrecorded equitable interest of a purchaser in possession of the property).  Thus, the question of whether the  trustee's rights as a bona fide purchaser are superior to that of appellant's is determined by Pennsylvania state law.

Pennsylvania's race-notice statute found in 21 P.S. § 351 provides that a subsequent bona fide purchaser of real property having no notice or knowledge of a prior interest in the property is protected against that interest.  21 P.S. § 351; see also Lund v. Heinrich, 410 Pa. 341, 246 (1963); Long John Silver's Inc. v. Fiore, 386 A.2d 569, 573 (Pa. Super. 1978).  Under Pennsylvania law, "either actual or constructive notice of the prior interest will disqualify one from becoming a bona fide purchaser."  Fiore, 386 A.2d at 573.

Although actual knowledge disqualifies one from obtaining bona fide purchaser status under Pennsylvania law, federal bankruptcy law specifically deems actual knowledge of the trustee irrelevant.  The phrase "without regard to any knowledge of the trustee or any creditor" appearing in § 544(a) means without regard to any actual knowledge that the trustee might have of competing interests.  In re White Beauty View, Inc., 81 B.R. at 293.  As one court explained:

> Knowledge refers to actual notice or information as opposed to constructive notice. The statute provides for the scenario wherein the trustee, as a private individual, has actual notice of a particular title defect. If he then became the appointed trustee, said actual knowledge would prevent him from performing his fiduciary duties. In anticipation of such a problem, Congress provided that such a person's actual, personal knowledge of a defect would not affect his function as a trustee.

In re Mitchell, 80 B.R. 350, 352 (Bankr. W.D. Pa. 1987). Thus, it is clear that even if a trustee has actual knowledge, it "will not prevent the trustee from asserting the rights of a hypothetical purchaser without such knowledge." Id.; see also In re O'Connor, 432 B.R. 175, 178 (Bankr. M.D. Pa. 2010) ("[E]ven if a state's substantive law is such that actual knowledge will operate to prevent one from attaining the status of a bona fide purchaser, 'bankruptcy law renders a trustee's actual knowledge of a lien or defect irrelevant by virtue of the provisions of § 544(a)(3).'"); see also 5 COLLIER ON BANKRUPTCY, ¶ 544.02[1] at 544-5 (same).

While a trustee's rights are unaffected by any actual knowledge, constructive notice will serve to defeat his or her status as a bona fide purchaser. In re Mitchell, 80 B.R. at 352 ("[A] trustee is bound by any constructive notice he has."); see also R.A. Beck Builder, Inc. v. Schmitt, 66 B.R. 666 (Bankr. W.D. Pa. 1986) (same). Constructive notice refers to "what a purchaser of debtors' property would have discovered from inspecting the public record in the office of the recorder of deeds as well as from inquiring of the person in possession of the property or of anyone else the purchaser has reason to believe has knowledge of facts which might affect title to the property." In re Lauver, 372 B.R. 751, 760 (Bankr. W.D. Pa. 2007); see also Sidle v. Kaufman, 345 Pa. 549, 557 (1942) ("It is well settled that purchasers and mortgagees of real estate are affected not only by matters of which they had actual knowledge and by what appeared in the office of the recorder of deeds and in the various courts of record whose territorial jurisdiction embraced the land in dispute, but as well 'by what they could have learned by

inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect the title.").

The trustee is barred from using the avoidance powers "where there are matters of record giving constructive notice of a competing interest." In re O'Connor, 432 B.R. at 178 (quoting 5 COLLIER ON BANKRUPTCY, ¶ 544.03[2] at 544-7 to 8). Matters of record include: a proper filing, a divorce decree, a pending divorce proceeding, a *lis pendens*, or an inquiry notice of a prior claim. Id.

Appellant's contention that the trustee is not a bona fide purchaser because she had sufficient notice of appellant's interest in the mineral rights through the 1990 handwritten agreement and the 1996 deed is misplaced. First, the 1990 agreement which purported to transfer the mineral rights from debtor to appellant was unrecorded. It is well known that the transfer of an interest in mineral rights is a transfer of real property. See Duquesne Natural Gas Co. v. Fefolt, 198 A.2d 608, 610 (Pa. Super. 1964) (citing 24 P.L.E. Mining; Oil and Gas § 11, p. 144). As such, the 1990 agreement was "statutorily required to be recorded." See Lesnick v. Chartiers Natural Gas Co., 889 A.2d 1282, 1284 ("The oil and natural gas rights are part of the land, and therefore have to be recorded."). The failure to record the 1990 agreement resulted in an invalid transfer of any mineral rights to appellant because a prior unrecorded conveyance is void against a subsequent bona fide purchaser. 21 P.S. § 351 (Any unrecorded conveyance of land "shall be adjudged fraudulent and void as to any subsequent bona fide purchaser."). The trustee was such a purchaser as of the date the petition was filed.

Second, while the 1996 deed did contain an explicit reservation clause which reserved all the mineral rights in the "GRANTORS", who at the time were debtor and appellant, the 1998 Property and Settlement Agreement ("PSA") effectuated the transfer of all of appellant's surface

and mineral rights in the property to debtor and explicitly failed to reserve any mineral rights in appellant. The PSA stated that appellant agreed to convey to the debtor "all of her right, title and interest in ... [a]ll of Victoria Maria Howard's interest in real estate holdings . . . ." The logical reading of the PSA and the accompanying deed is that the parties did just that: they transferred all of appellant's interest in real estate holdings except the property specifically retained by appellant.

Against this backdrop, appellant's contention that the failure of the PSA to reference mineral rights demonstrates that it was not appellant's intention to transfer those rights is unavailing. Under Pennsylvania law, three distinct estates in land are recognized: 1) the surface estate; 2) the mineral estate; and 3) the right to subjacent (surface) support. <u>Hetrick v. Apollo Gas Company</u>, 608 A.2d 1074, 1077 (Pa. Super. 1992); <u>see also</u> <u>Consolidation Coal Co. v. White</u>, 875 A.2d 318, 327 (Pa. Super. 2005). Transfer of the surface estate with the intent to retain rights in the mineral estate requires explicit language in the deed. <u>See</u> <u>Sheaffer v. Caruso</u>, 544 Pa. 279, 284, 676 A.2d 204 (1996) (By using the term "reserving," [in the deed] [the grantor] created in herself an estate in the oil and gas."). Language such as the following has been held to be sufficient to reserve such interest:

> EXCEPTING AND RESERVING from First Tract and Second Tract all the coal
> and mining rights and the oil and gas as fully as the same have been excepted and
> reserved or conveyed by former owners.

<u>Sheaffer</u>, 544 Pa. at 281.

It is clear that the 1998 PSA did not contain any reservation language as to mineral rights, and appellant's agreement to convey all her interest in real estate holdings served to relinquish all her surface and mineral rights in the property. More importantly, the 1998 deed did not reserve any interest in mineral rights in the conveyance executed pursuant to the PSA.

15

Although appellant argues that the language of the deed does not properly reflect the true intentions of the parties, the language of conveyance is clear and unambiguous. It is undisputed that the deed resulting from the PSA was recorded. As such, a public search of the records revealed that as of 1998, appellant as grantor did "convey to [debtor John Howard] . . . all of the Grantor's right, title and interest in and to the following tracts of real estate situate, . . . " with the tracts in Whitley Township being specifically described. Nowhere did appellant affirmatively reserve any interest in mineral rights to that property. See 1998 Deed - Exhibit G to the Trustee's Memorandum of Law (Doc. No. 31 in Adversary No. 09-2127-JAD) at 2, 10-13. As such, the mineral rights were conveyed to the debtor under Pennsylvania law. See Consolidated Coal Co. v. White, 875 A.2d 318, 327 (Pa. Super. 2005) (holding that mineral and other subsurface rights not explicitly reserved in the deed are transferred to the purchaser of the surface rights). Moreover, it signified to anyone examining the public chain of title that all interests appellant had in any of the real estate holdings being conveyed were being conveyed to the debtor. Under these circumstances appellant was precluded from introducing any extrinsic evidence to "show that the parties intended something different that was not incorporated into the contract." Bohler-Uddeholm America, Inc. v. Ellwood Group Inc., 247 F.3d 79, 93 (3d Cir. 2001).

The recorded chain of title only provided notice that the debtor was the sole owner of all the interests in the Whitley Township property, including the mineral rights previously enjoyed by debtor and appellant. Thus, the recorded deeds defeated any claim that the trustee had constructive notice of the interest purportedly held by appellant.

It follows that the trustee was entitled to exercise her "strong arm" powers and avoid the transfer of mineral rights sought to be accomplished through the post-petition quit claim deed from debtor to appellant. The bankruptcy court correctly determined that no genuine issues of

16

material fact existed as to whether the trustee's rights were superior to appellant's and as such the trustee could exercise her strong arm powers to void the 2008 transfer and recover the proceeds appellant gained from the lease with J&J Oil.

Appellant's remaining contentions equally are unavailing. The assertion that the bankruptcy court delved into improper fact-finding at summary judgment fails to appreciate the standards which govern Rule 56 motions in federal court and the evidence the trustee marshaled in support of her cross-motion.

The trustee's motion clearly raised the issue of whether appellant willfully had violated the automatic stay and whether the recovery of attorneys fees and costs as well as punitive damages were appropriate. See The Trustee's Memorandum of Law (Doc. 31 in Adversary No. 09-2127) at 16-17. Supporting evidentiary materials were advanced with the motion and brief. Id. at Exhibits A through K. A hearing was held on October 27, 2009, and the bankruptcy court ordered appellant to provide an accounting after becoming aware of appellant's receipt of proceeds pursuant to the lease with J&J Oil. See Doc. No.s 32-38 in Adversary No. 09-2127. Appellant was ordered to file an accounting by November 9, 2009. Id. at Doc. No. 46. The trustee moved for an expedited hearing on her motion requiring escrow of the disputed funds from the lease on November 10, 2009, asserting that based on the accounting and appellant's deposition testimony, appellant had spent or otherwise no longer retained $129,000 of the $600,000 received from J&J Oil. The trustee noted that appellant had been and intended to continue to withdraw $6,000 a month from the advanced funds for her personal expenses, which she perceived as the amount of monthly equitable distribution payments she was entitled to receive based on the "permanent alimony" payments she had received from John Howard prior to his filing the petition in bankruptcy. Id. at Doc. No. 48. Appellant filed a Memorandum in

Opposition to the Trustee's Motion for Expedited Order and a "Consolidated Memorandum" on November 17, 2009, with supporting exhibits in response to the trustee's filings. Id. at Doc. No.s 51 & 52. Thus, the record had been sufficiently developed concerning appellant's receipt of the quit claim deed, her execution of the paid-up oil and gas lease, her recording of that lease and her handling of the funds therefrom.

Moreover, the standards governing Rule 56 motions in federal court obligated appellant to come forward with evidence to show there was a genuine material issue of fact as to all of the issues upon which the trustee was seeking summary judgment.[1] She was given more than a

---

[1]These standards are well-settled. Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. National State Bank v. National Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986) (quoting Fed.R.Civ.P. 56 (a), (e)) (emphasis in Matsushita). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's

sufficient opportunity to do so.  Appellant's numerous accusations of impropriety essentially

reduce to the proposition that the bankruptcy court misinterpreted the evidence and reached the

wrong conclusions.

Many if not all of the historical events underlying this appeal are not in dispute.

Appellant disputes the bankruptcy court's application of the law to these facts.  On appeal she has

not advanced any new or different evidence that demonstrates that material issues of fact

remained as to the issues that were definitely resolved on December 1, 2009, and December 10,

2009.  The bankruptcy court requested further development of the record as to the fees and

damages claimed by the trustee as a result of the violation of the automatic stay.  Appellant was

given additional opportunity to challenge the trustee's claimed fees and costs.  She challenged the

trustee's legal standing to receive such damages but did not challenge the amount of

compensatory damages requested by the trustee.  Given these developments, it cannot be said

that the bankruptcy court committed error in rendering the rulings it made pursuant to the

trustee's cross-motion for summary judgment.

Appellant's contention that material facts remained as to the issue of whether appellant

willfully violated the automatic stay is misplaced.  The bankruptcy code prohibits "any act to

obtain possession of property of the estate...." 11 U.S.C. § 362(a)(3).  "Section 362(h) of the

bankruptcy code provides for, *inter alia*, recovery of actual damages for any willful violation of

a stay."  In re Lansdale Family Restaurants, Inc., 977 F.2d 826, 829 (3d Cir. 1992).  A willful

---

evidence merely is colorable or lacks sufficient probative force summary judgment must be
granted.  Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of North
America, 974 F.2d 1358, 1362 (3d Cir. 1992), cert. denied, 113 S.Ct. 1262 (1993) (although
the court is not permitted to weigh facts or competing inferences, it is no longer required to
"turn a blind eye" to the weight of the evidence).

violation of the automatic stay occurs when a creditor violates the stay with knowledge that a bankruptcy petition has been filed. Id. (citing In re University Medical Center, 973 F.2d 1065, 1087-88 (3d Cir.1992)); see also In re Atlantic Business and Community Corp., 901 F.2d 325, 329 (3d Cir. 1990). "Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." Lansdale Family Restaurants, Inc., 977 F.2d at 829.

It cannot be disputed that appellant was aware of the petition at the time she executed the oil and gas lease, permitted her attorney to record the quit claim deed on her behalf, recorded the oil and gas lease and spent the $129,000 of the advanced proceeds. These undisputed facts supply more than an adequate basis to support the bankruptcy court's determination that appellant committed intentional acts seeking to gain control over property of the estate with knowledge that the debtor's petition had been filed. Furthermore, appellant's arguments as to ownership of the mineral rights fall far short of supplying the type of "persuasive legal authority" derived from numerous bankruptcy and district court opinions that the Secretary of Health and Human Services advanced in In re University Medical Center, 973 F.2d 1065 (3d Cir. 1992), and which the Third Circuit found sufficient to "escape liability under [Atlantic Business and] section 362(h)." Id. at 1088-89.

Appellant's assertion that the trustee lacks standing to recover damages for violation of the automatic stay equally is unavailing. The bankruptcy court thoroughly addressed this issue in its May 17, 2010, Memorandum and Order of Court resolving appellant's post-trial motion for reconsideration. Its reasoning regarding the broad definition of an "individual" adopted in Atlantic Business is well-taken. Furthermore, the trustee occupies a distinct role as the individual protecting the interests of the estate and seeking to protect the interests of all creditors.

The trustee discharges these responsibilities in part by assuming control over certain property previously belonging to the debtor for the purpose of making an equitable distribution. There is no logical basis to deem such a person to be beyond the protections afforded by the statutory mechanisms designed to advance the accomplishment of the traditional functions of bankruptcy such as protecting the debtor's property for the benefit of all affected parties.

It likewise cannot be said that the bankruptcy court abused its discretion in awarding punitive damages given the circumstances that were presented. The standards governing the imposition of punitive damages are settled. As the court in In re Frankel aptly observed:

> "[P]unitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so." In re Wagner, 74 B.R. 898, 903-04 (Bankr. E.D. Pa.1987) (quoting Cochetti v. Desmond, 572 F.2d 102 (3d Cir.1978)) (internal quotations omitted); In re Patterson, 263 B.R. 82, 97 (Bankr. E.D. Pa.2001). Punitive damages are especially appropriate when a party has acted in "arrogant defiance" of the Bankruptcy Code. In re Medlin, 201 B.R. 188 (Bankr. E.D. Tenn.1996) (cited in In re Curtis, 322 B.R. 470, 487 (Bankr. D. Mass.2005)). Whether actions taken by a party in connection with a violation of the automatic stay merit an assessment of punitive damages is a matter left within the sound discretion of the bankruptcy court. Clayton, 235 B.R. at 811; In re Hendry, 214 B.R. 473 (Bankr. E.D. Va.1997).

> Four factors are considered when determining whether to award punitive damages and, if so, in what amount: (1) the defendants' conduct; (2) their motives; (3) any provocation by the debtor; and (4) each individual defendant's ability to pay. In re B. Cohen & Sons Caterers, Inc., 108 B.R. 482, 487 (E.D. Pa. 1989); In re Patterson, 263 B.R. at 97; see also In re Aponte, 82 B.R. 738, 745 (Bankr.E.D.Pa.1988) (court must consider both the wrongdoer's act and his motive); In re Wagner, 74 B.R. 898, 905 (Bankr. E.D. Pa.1987) (court must consider the nature of the conduct and the ability to pay).

391 B.R. 266, 275 (Bankr. M.D. Pa. 2008). The bankruptcy court applied these standards after conducting a hearing on April 9, 2010. <u>See</u> Memorandum and Order of Court of May 17, 2010 (Doc. No. 119 in Adversary No. 09-2127) at 2-5.

The bankruptcy court explained that appellant had knowledge of the automatic stay, both through filing a claim in the main case on May 27, 2008, and from the trustee contacting appellant's counsel in September of 2009 and advising him that in the trustee's view the mineral rights were property belonging to the estate.[2] After having knowledge of the bankruptcy filing appellant had her attorney file the quit claim deed. After further being informed of the trustee's position as to ownership appellant filed the lease into the property record of Green County. She deposited the funds into her own accounts and did not turn over the funds to the trustee as directed in three separate orders. She admitted that she treated the money as being hers based on her pending proof of claim for permanent alimony and the lack of any other resourses. Based on these undisputed facts, the bankruptcy court reasoned that appellant at the very least acted "with reckless disregard" as to her duty to comply with the automatic stay. <u>See</u> Memorandum and Order of Court of May 17, 2010 (Doc. No. 119 in Adversary No. 09-2127) at 9.

The bankruptcy court then considered appellant's ability to pay a punitive damages award. After considering the above, the amount requested by the trustee (twice the amount of compensatory damages), appellant's ability to pay and the remaining aspects of the record, the

---

[2] Attorney McIlvaine testified that directly after the conversation with the trustee he advised appellant to put the proceeds derived from the advanced payment in a separate escrow account. <u>See</u> Trustee's Trial Exhibit 1 submitted at April 9, 2010, Hearing - April 9, 2010, Affidavit of Carlota M. Bohm, Trustee for the Bankruptcy Estate of John W. Howard; Trustee's Memorandum of Law on the Award of Punitive Damages (Doc. No. 113 in Adversary No. 09-2127) at 4-5; Doc. No. 1-45 in 2:10cv962 at 5.

court concluded that a $5,000.00 award was sufficient to punish the appellant and deter others from committing similar acts.

The record more than adequately supported the manner in which the bankruptcy court elected to exercise its discretion. There was a firm basis for the award. Appellant persisted in her efforts to control the proceeds from the lease and continued to consume the proceeds after knowing that the petition had been filed and the trustee claimed the property/proceeds as property of the estate. She treated the proceeds as her own by investing them in certificates of deposit and using them for her own legal fees and personal support. She failed to turn the proceeds over despite orders from the court directing her to do so and only did so after three orders had been entered. Given these circumstances, it cannot be said that the bankruptcy court erred or otherwise abused its discretion in entering the punitive damage award.

Appellant's multiple efforts to deflect responsibility for her conduct are unavailing. First, there were grounds to support the determination that appellant's conduct in violation of the automatic stay went well beyond the fact that Attorney McIlvaine filed the quit claim deed for the benefit of appellant. Appellant's own submissions to this court indicate that directly after Attorney McIlvaine became aware of the trustee's position as set forth in a letter September 17, 2009, he advised appellant to place the proceeds from the lease in a separate escrow account. See Doc. No. 1-45 at 5. Thereafter, appellant recorded the paid up oil and gas lease and continued to treat and consume the proceeds as her own. By her own account, she used the money to pay counsel fees to fight the trustee's position and to support herself, reasoning that the proceeds reflected her entitlement to ongoing alimony from the debtor's estate. To suggest that the focus was or should be on who physically filed the quit claim deed purporting to give appellant legal title to the mineral rights is to suggest that the matter be analyzed with myopic

23

vision.  Neither the bankruptcy court nor this court should be required to engage in such short-sighted folly.

Appellant's contentions that the issues raised by her claim of ownership to the mineral rights would have given rise to the same course of litigation and therefore the trustee would have expended the claimed amount in fees and incurred the same costs in any event is belied by appellant's conduct throughout the history of this case.  Appellant's position might have some force if she merely would have litigated her ownership rights before taking further action as to the mineral rights or even if she immediately had deposited the funds from the lease with the court and asked for a prompt disposition.  She did not pursue either of these routes and instead embarked on a course of conduct which required the trustee to pursue relief from the court at every turn in an effort to gain control of what ultimately was determined to be property of the estate.  To suggest that the course of litigation would have been the same as it would have been if she merely asserted and litigated her claimed right to ownership ignores the numerous measures the trustee virtually was required to take in reaction to appellant's persistent course of conduct and defiance of court orders.  As noted by the bankruptcy court, the automatic stay exists not only for the benefit of all debtors, but also for the benefit of all of a debtor's creditors.  Actions aimed a self-help intentionally taken with knowledge of the stay and without engaging in the bankruptcy process cannot be countenanced and should not be excused pursuant to a bare claim of lack of legal understanding or financial desperation.

For the reasons set forth above, the bankruptcy court's orders of December 1, 2009, December 10, 2009, January 15, 2010,  April 9, 2010, May 14, 2010, May 17, 2010, June 10, 2010, and July 2, 2010, in which and to the extent the court held that as a matter of law the estate of John Howard, and not Victoria Howard, owned the mineral rights to certain property at the

time the debtor, John Howard, filed his petition in bankruptcy, and the related order of July 20, 2010, in which the bankruptcy court entered an order approving the sale of the mineral rights to United Bank, the substituted appellee, will be affirmed.   Likewise, the bankruptcy court's orders of December 1, 2009, December 10, 2009, January 15, 2010,  April 9, 2010, May 14, 2010, May 17, 2010, June 10, 2010 and  July 2, 2010, in which and to the extent the court held that the trustee was entitled to recover compensatory and punitive damages for willful violation of the automatic will be affirmed.  An appropriate order will follow.


Date: February 9, 2011.


s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:     Avrum Levicoff, Esquire

       Carlota M. Bohm, Esquire

       Robert O. Lampl, Esquire

       Paul J. Cordaro, Esquire

       Via: CM/ECF Electronic Filing